Good morning, Your Honors. Thank you. I will reserve four minutes for rebuttal, and I'll watch the time. This case involves three issues, whether a demotion is an adverse action, whether the reasons given for demoting Mr. Gannon were a pretext, and whether the motive was discriminatory based on his race. What was the third one? Pardon me. The third one you said? Whether the motive was discriminatory based on his race. We maintain that the... How many of those elements do you have to prove, Counsel, in order to prevail here today? We need to prevail on all three. On all three. Okay. We will show that there is disputed evidence whether the demotion was coerced and then rescinded, and then he was placed in a demoted position anyway. We will also show that the motive was discriminatory, that arguments made by opposing counsel that Honkey's and other racist remarks that were made to other coworkers were not stray remarks because they were made by the supervisors in question. We will also show that the subordinate bias liability theory that we argued to the court below is the same as the more refined cat's paw doctrine, which is a refinement of that issue. This is a Title VII case. There is de novo review under the Civil Service Reform Act, and the court erred in making credibility findings by conducting a record review. Counsel, if I could steer you to actually your third point about the race discrimination. What evidence is there other than the fact that Johnson was known to use the word Honkey? There's the fact that he referred to my client in a derogatory way and refused to allow him to sit with the other minority supervisors during lunch. During lunch when? Well, during the period that they were both supervisors. My client was a supervisor at the same time as the person who demoted him. And he didn't want him sitting at lunch? That's correct. He made comments. How many times? This was a recurring event until my client got the clue and decided not to press the point. So who wasn't he allowed to sit with? Well, he could do whatever he wanted just so long as he didn't. He didn't sit with Johnson? That's right. Okay. And then referred to Honkey. Is there any evidence that Mr. Johnson ever referred to Mr. Gannon as a Honkey? No, he didn't. And we maintain that Sprint v. Mendelton and the Supreme Court decision on the admissibility of evidence. The evidence in the record shows that Mr. Johnson at one time or another used the word Honkey in relation to somebody else but not to Mr. Gannon. That's correct. Okay. This was the same supervisor that was involved in making the decisions as opposed to an unrelated supervisor, which would be a stray remark. What other evidence do you have of racial discrimination? Is that it? We have the fact that the justification asserted for demoting Mr. Gannon, that he requested a demotion, that he voluntarily ---- What other evidence do we have that Mr. Johnson was engaged in racial discrimination here? Well, he was involved in the decision to demote. Was he present at the meeting where Mr. Gannon agreed to resign or agreed to take the second position? They did not allow him in that meeting. Who didn't allow him in that meeting? Who's they? Well, my understanding is that the managers who held that meeting, Bob Williamson and James Taylor ---- Counsel, just a minute. When you argue this way, are you giving us factual evidence that was considered ---- Yes, I'm restricting myself to the factual evidence. There's other credibility evidence that is not in the record and that there would be judicial notice taken of were the case to be remanded, which we are requesting that you do. But this is the information that was argued to the court and supported by deposition testimony or the investigation testimony or the documents submitted to the Federal Circuit. And this is a case in which the Federal Circuit found sufficient evidence to reverse and remand the Merit Systems Protection Board on the grounds that there was sufficient justification to find that the demotion was not voluntary. And that's the issue that the district court should have decided there was sufficient evidence to send it to a trial. And the pretext evidence ---- Aren't the findings and judgment presumptively correct? No. Under 711 ---- 7703b2, the court, the district court does a de novo review of Title VII, ADEA, and Rehab Act cases. And there's no presumption of correctness attached to any finding by the Merit Selection Board? The Merit Systems Protection Board also decides civil service issues. However, when we filed the complaint, and you'll see in the file, the complaint raises no separate Civil Service Reform Act issue. It only raises Title VII issues. That's the sole issue that we ---- But what did the MSPB decide? The MSPB decided to exclude Mr. Gannon's witnesses and ruled based on very difficult ---- Just tell me what the MSPB decided. That the demotion was not voluntary. Okay. So if the demotion is not voluntary, I'm going to follow up on Judge Beeser's question. Doesn't that mean, then, that the demotion was not an adverse employment action? Well ---- Aren't we bound by that finding by the MSPB? That's straightforward right up, right down the middle of their jurisdiction. It has nothing to do with adjunct claims or anything else. Well, the Federal Circuit found that this was a mixed case that should have a trial on that issue. That is, the core of the Title VII case is whether or not the demotion was voluntary. That is a Title VII discrimination issue because there are different issues ---- Well, except they wouldn't have had jurisdiction. The Federal Circuit wouldn't have reversed and remanded it and sent it back to the MSPB for a hearing but for the fact that they had jurisdiction. The MSPB would not have had jurisdiction but for the fact that there is a question about the voluntariness of the demotion. Okay. Counsel, you're down to three minutes. I don't know if you wanted to save your time. Oh, thank you. I do want to save my time. Thank you very much. Thank you. May it please the Court. Good morning, Your Honors. My name is Owen Mardikin, arguing for the Defendant Appley United States Postal Service. I'd like to begin by referring to a couple comments that counsel just made with respect to the MSPB decision that I think are incorrect and should be clarified. First, counsel said that there was no Civil Service Reform Act issue raised in this case. And while a cursory reading of the complaint would draw one to that conclusion, when the summary judgment was filed and argued, a district judge asked counsel specifically if she wanted the court to review the Civil Service Act record. And counsel answered in the affirmative, and that's why the district court went ahead and actually did a record review, as if it had been played. Are we bound by the MSPB's findings? Yes. This Court owes deference to the MSPB's findings as to the scope of its competency. Okay. Is the question of whether Mr. Gannon voluntarily accepted a demotion than one that was within the MSPB's jurisdiction? Well, interestingly, it is within their jurisdiction, but it's also part of the Title VII case. I think that's the case. So do we owe any – given that what's really before us is the Title VII aspect, which I understand was part of their mixed jurisdiction to take on, is their determination about the nature of the agreement that they came to here binding on the court? Well, it is, Your Honor. And I answer that way because the MSPB's Civil Service Act holding actually is before this Court. Well, wait a minute. Are we absolutely bound by it, or are we persuaded by it, or do we just ignore it? What standard is used? This Court offers it deference, abuse of discretion deference as to the voluntariness issue, which, in fact, was part of this case below. Whether that voluntariness decision plays a part in how this Court decides the discrimination issue is actually a question of first impression. I believe this Court should accord deference because the question is identical, and it was decided on the merits after a trial. The second point that I wanted to make, and this might have just been a misstatement, is that counsel said that the MSPB ruled that the demotion was not voluntary. Actually, it was the opposite. The MSPB ruled that it was a voluntary demotion. Now, on the discrimination side, I think I'd like to emphasize the weakness of the evidence of discrimination here, of racial animus. What counsel says is that as the sole evidence of pretext in this case, that's actually part of the record is this comment that this allegation, it's actually a sworn statement by the plaintiff that Frank Jackson was known, so it's hearsay, to refer to some other person as honky. No more specificity than that. Was Johnson even in the meeting with Gannon when Gannon agreed to take the other position? He was not, Your Honor. And is there any evidence that he influenced that decision or that he dictated it? Absolutely none, Your Honor. Were the people there who made the decision, did they report to Johnson or did Johnson report to them? Jackson. I'm sorry, it's Frank Jackson. I'm sorry, Jackson. But he reported to them. Well, he reported to Bob Williamson, the white male who was the senior plaintiff manager. The other gentleman there, James Taylor, is a human resources manager, so they were kind of in a different chain of command. So Jackson reports to Williamson. Williamson is the one who's present with Gannon at the meeting where Gannon agrees to take a demoted position. Williamson and Taylor, who are both the white male. Okay. And Williamson is white. Williamson, yes, Your Honor. Williamson is a white male. Do we have anything to connect Johnson to Johnson? I mean, I'm sorry, Jackson. Is there any evidence that Jackson influenced Williams? There is not. And what's interesting here that the plaintiff has downplayed is that Mr. Taylor, the white male who was in that meeting, did his own investigation. He interviewed witnesses himself and came to his own conclusion that what Mr. Gannon did was worthy of discipline. So there's a completely independent investigation. Certainly Mr. Jackson interviewed people himself, but Mr. Taylor interviewed witnesses himself and came to his own conclusion actually before Mr. Jackson performed his own interviews. So there was another comment that counsel made about supposed evidence in the record about derogatory remarks that Jackson used with Mr. Gannon. And I'm not sure what counsel is referring to, but I don't believe there's anything in the record to substantiate that, that Mr. Jackson ever referred to Mr. Gannon either to his face or behind his back in a derogatory way, whether with respect to race or anything else. The comment about sitting at lunch, I don't believe that's in the record either. It's certainly an allegation that may have even been in the complaint, but there's no evidence to back that up in the record, in the summary judgment. How do you deal with the argument that Taylor was simply Jackson's cat's paw? I believe it's — There's no evidence to back that up, Your Honor. Mr. Taylor performed his own investigation. Was that argument adequately raised in the briefs? It was on the government's part. The cat's paw argument was not raised by the plaintiff. That's true. But I, in an abundance of caution, I suppose, addressed it anyway, because I think the evidence simply doesn't support that, even if the Court were to believe that to have been properly raised. We haven't discussed the retaliation issue at all, because I think perhaps even the plaintiff would submit that that's been settled and is now moot. Your Honors, this is a case of a complete failure of proof at the summary judgment stage. At, frankly, every level, from the level of deciding on an adverse action to the level of whether there was a legitimate business reason for the disciplinary action that was taken, which is not in dispute, and third, whether there was any evidence of pretext of discrimination. Mr. Gannon was accepted and stated in writing that he voluntarily accepted a lower position after a meeting contesting a notice of proposed removal with two white, like him, white male senior managers, Mr. Williamson and Mr. Taylor. He took the demotion after that meeting in settlement of the notice of proposed removal. There is no evidence to suggest that Mr. Jackson, who, yes, is African-American, had anything to do with that decision or that racial animus played any part. With that, Your Honors, unless you have any more questions, I'm willing to submit. Thank you, Counsel. Mr. Marnikin. Counsel, you've reserved three minutes. Thank you. Yes, I am corrected that the voluntariness issue was decided against my client at the MSPB level, clearly. I apologize for misstating that. But the one of the issues raised is whether or not we raised a civil service issue in the supplemental briefing that we did to the court after the hearing on the motion for summary judgment. And you can see from the brief that was submitted, I believe it's court record 82, that we only raised the issue by quoting the Federal Circuit, which has a blanket paragraph on raising mixed cases in the district court. And there's just a mention of the word civil service reform act, because it's the civil service reform act that gives plaintiffs the right to district court jurisdiction for mixed cases involving both discrimination and nondiscrimination issues. And because this is a mixed case, we have a right to de novo review under 5 U.S. Code 7702b. De novo review of law or fact or both? Both. And we're going to take testimony? Well, the district court on remand will send it to a jury trial. And the testimony that is submitted in the motion for summary judgment is reviewed de novo by the Ninth Circuit. But the Ninth Circuit does not take additional testimony. The civil service reform act has sort of a labyrinthian structure, and that's why this case went not only to the EEOC, the Office of Federal Operations in Washington, D.C., remanded it for hearing on the voluntariness of the demotion. The Merit Systems Protection Board got the case. The administrative judge dismissed it. Mr. Gannon brought it back up to the Merit Systems Protection Board in Washington, D.C., for review, then to the Federal Circuit. The Federal Circuit cannot hear mixed cases. They remanded it back to the Merit Systems Protection Board for a hearing. And this case is now in the posture of being remanded for a trial de novo on the voluntariness. Now, to address one of Mr. Mardikin's points about whether or not there's sufficient evidence of race discrimination, the pretext involved in telling Mr. Gannon that he had requested a demotion, and then doing a subsequent investigation, assigning Daryl Clark, the very supervisor who started all of this, who is African American, and who found that there was no substance to the investigation, that is considerable evidence that they knew that they could not remove him, they had proposed to remove him, and they retracted the demotion, but then demoted him anyway. That should give this Court great pause. And I submitted a letter, because there was a typo in my brief, which was filed on Friday and faxed on Thursday to Mr. Mardikin. And if the Court would look at the letter by Daryl Clark, dated December 19, 1995, that is the African American gentleman that started all this and that was given authority to investigate. I believe my time is over. Well, pardon me. I have a few more minutes. You're over. The clock is indicating that you're over. Thank you very much. Thank you, counsel. All right. The case of Gannon v. Potter is ordered submitted.
judges: Beezer, Bybee, Bea